IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JAMES HARDWICK | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 15-326-SLR |
| | ) | |
| CHRISTOPHER SENATO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

James Hardwick, Smyrna, Delaware.   Pro Se Plaintiff.

Ryan P. Connell, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware.   Counsel for Defendants.

## MEMORANDUM OPINION

Dated:   June 28, 2016
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Plaintiff, an inmate at the James T. Vaughn Correctional Center ("VCC"),

Smyrna, Delaware, filed this lawsuit[1] pursuant to 42 U.S.C. § 1983 and the Religious

Land Use and Institutionalized Persons Act ("RLUIPA") against defendants.[2] He

proceeds pro se and has paid the filing fee. The case proceeds on the amended

complaint (D.I. 6) and its amendment (D.I. 12) (together "amended complaint") seeking

monetary and declaratory relief.[3] Presently before the court is defendants' motion for

summary judgment and to dismiss. (D.I. 28)

## II. BACKGROUND

Plaintiff is a Jewish inmate at VCC and sues defendants in their individual and

official capacities. (D.I. 6 at 7)[4] Plaintiff alleges he arrived at VCC in or about 2008

and throughout the following years, defendants Morris, Senato, and Pennell denied him

equal protection and free exercise of religion in violation of the First, Eighth, and

Fourteenth Amendments and the RLUIPA. (Id. at 8, 13) Specifically, plaintiff alleges

---

[1] Plaintiff was one of several plaintiffs named in Civ. No. 12-1120-SLR, a case that raised religious discrimination claims based upon Muslim, Catholic, and Jewish faiths. Plaintiff, who is Jewish, moved to join Civ. No. 12-1120-SLR, which motion was granted on September 14, 2014. (Civ. No. 12-1120-SLR, D.I. 104, 141) On February 27, 2015, defendants (acknowledging that the court had granted plaintiff's motion to intervene) filed a motion to strike plaintiff's claims or, in the alternative, to sever plaintiff's claims into a new civil action. (Civ. No. 12-1120-SLR, D.I. 188) The court granted the motion to sever and opened the present civil action.

[2] Sheryl Morris ("Morris"), Food Service Supervisor; Christopher Senato ("Senato"), Regional Food Service Director; and Frank Pennell ("Pennell"), Chaplain. Defendant Perry Phelps has been dismissed. (D.I. 20 at 2 ¶ 3, see D.I. 11)

[3] Plaintiff's motion to compel was granted, requiring that defendants' response to discovery requests be submitted to the court by July 29, 2016. (D.I. 34)

[4] The court cites to page numbers assigned by ECF for D.I. 6.

defendants refused to grant him religious rights, access to religious programs and services for Jewish inmates, and conspired to allow the alleged violations. (*Id.* at 8) Plaintiff alleges that Pennell did not voluntarily offer information to him regarding the practice of his faith, and it was only at his request that he was given a form to request to practice his faith at an available chapel. (*Id.*) After learning there were other Jewish inmates with access to Jewish programs and services, plaintiff withdrew his original form and requested the right to those privileges. (*Id.* at 9) Pennell allegedly stated the request would be denied until the Rabbi had confirmed plaintiff's faith. (*Id.*) A letter from Pennell to plaintiff dated October 27, 2008 requests "any information of [plaintiff's] Jewish heritage" so that Pennell could forward such to Rabbi Vogel, for his approval. (D.I. 16 at 24)[5] On February 17, 2009, a letter from Pennell to plaintiff states that Pennell's supervisor received plaintiff's letter regarding Jewish services and that, upon receipt of the information requested in October, 2008, Pennell would start the process for plaintiff's request. (D.I. 16 at 25) Plaintiff contends that Pennell made no effort to assist him when the Rabbi did not contact plaintiff. (D.I. 6 at 9) Plaintiff alleges that he filed several grievances and appealed the decisions. (D.I. 6 at 10) According to plaintiff, he learned almost four years later (through a chapel clerk) that there was a change of faith form. (*Id.*) Within one year of completing the new form, plaintiff was officially recognized as Jewish by the prison administration. (*Id.* at 10) Plaintiff concludes that Pennell's request for the "Rabbi to confirm [his] faith as a Jewish person" caused a four-year delay and resulted in "various constitutional violations." (D.I. 6 at 9)

---

[5] Citations to D.I. 16 are to the page numbers assigned by ECF.

Plaintiff further alleges that, in the few years following recognition of his Jewish faith, defendants Senato, Morris, and Pennell violated his First Amendment right to exercise his faith when: (1) he was unable to eat his food because on several occasions someone allegedly either tampered with his Kosher meal, overcooked it, or stole items from it; (2) after he filed a grievance, he experienced retaliation by being given the same non-Kosher meal for a week, which would not have been acceptable behavior towards other inmates; (3) Jewish programs and customs were withdrawn; (4) he was denied the receipt of a previously approved religious item; (5) he was initially denied employment; and (6) once employed, plaintiff met scheduling resistance because his Jewish faith does not permit him to work from Friday evening to Saturday evening. (*Id.* at 10-17)

Plaintiff alleges that he told Senato that someone had tampered with his food and, more specifically, about "a particular meal . . . laced with chunks of fat, etc." (D.I. 6 at 10, 14)   Plaintiff spoke with Senato regarding the non-Kosher morning meals and lack of specific foods on holidays.   (D.I. 16 at 16, 20)   Plaintiff filed grievances, which were left unresolved by Senato.   (D.I. 32 at 4)   Two grievance forms are in the record. (D.I. 28, exs. B, C)   In "Grievance #249441," the Bureau Grievance Officer wrote "[t]his recommendation . . . does not address the letter written to Director Senato, as this is not part of the grievance that was submitted."   (*Id.*, ex C)

Plaintiff alleges that all inmates must be employed by the culinary department before pursuing work in other areas.   (D.I. 6 at 12)   He was interviewed by Morris for a culinary position, but was not hired because his faith prevented him from working on Friday from sundown to Saturday at sundown.   (*Id.*)   Morris "complained that she ha[d]

3

to work on her day of worship, (Sunday[]) so she would not make any exceptions for others." (*Id.*) Plaintiff concludes that Morris's actions barred him from employment so, several years later, he had to forego the faith-based requirement to obtain employment. Plaintiff alleges that several years later, he was offered and took a building janitorial position and worked on the Sabbath. (Id. at 13) He was terminated after he was "shook-down" and written up. (*Id.* at 12, 13) Plaintiff alleges that he has exhausted all available administrative remedies in accordance with the prison system grievance policy. (*Id.* at 14)

## III.  STANDARDS OF REVIEW

### A.  Motion for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the burden of demonstrating the absence of a genuine issue of material fact.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 415 U.S. 475, 586 n. 10 (1986).  A party asserting that a fact cannot be—or, alternatively, is—genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motions only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(A) & (B).  If the moving party has carried its burden, the nonmovant must then "come forward with specific facts

4

showing that there is a genuine issue for trial." *Matsushita*, 415 U.S. at 587 (internal quotation marks omitted).   The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586-87; *see also Podohnik v. U.S. Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted).   Although the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," a factual dispute is genuine where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).   "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

### B.  Motion to Dismiss

A motion filed under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint's factual allegations.   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).   A complaint must contain

5

"a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 545 (internal quotation marks omitted) (interpreting Fed. R. Civ. P. 8(a)).  Consistent with the Supreme Court's rulings in *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Third Circuit requires a two-part analysis when reviewing a Rule 12(b)(6) motion.  *Edwards v. A.H. Cornell & Son, Inc.*, 610 F.3d 217, 219 (3d Cir. 2010); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  First, a court should separate the factual and legal elements of a claim, accepting the facts and disregarding the legal conclusions.  *Fowler*, 578 F.3d. at 210-11.  Second, a court should determine whether the remaining well-pled facts sufficiently show that the plaintiff "has a 'plausible claim for relief.'"  *Id*. at 211 (quoting *Iqbal*, 556 U.S. at 679).  As part of the analysis, a court must accept all well-pleaded factual allegations in the complaint as true, and view them in the light most favorable to the plaintiff.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002); *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).  In this regard, a court may consider the pleadings, public record, orders, exhibits attached to the complaint, and documents incorporated into the complaint by reference.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384-85 n.2 (3d Cir. 1994).

The court's determination is not whether the non-moving party "will ultimately prevail" but whether that party is "entitled to offer evidence to support the claims."  *United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 302 (3d Cir. 2011).  This "does not impose a probability requirement at the pleading stage," but

instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556). The court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-64.

Dismissal of pro se complaints for pleading deficiencies is not favored by the Third Circuit.[6] When a complaint fashioned under a notice pleading standard does not disclose the facts underlying a plaintiff's claim for relief, the defendant cannot reasonably be expected to frame a proper, fact-specific [ ] defenses . . . . The Rule 12(e) motion for a more definite statement is perhaps the best procedural tool available to the defendant to obtain the factual basis underlying a plaintiff's claim for relief." *Thomas v. Independence Twp.*, 463 F.3d 285, 301 (3d Cir. 2006) (internal citations omitted).

## III.  DISCUSSION

### A.  Motion for Summary Judgment

Under the Prison Litigation Reform Act ("PLRA"), prior to filing a civil action, a plaintiff-inmate must exhaust his administrative remedies, even if the ultimate relief sought is not available through the administrative process. 42 U.S.C. § 1997e(a); *Booth v. Churner*, 206 F.3d 289, 300 (3d Cir. 2000), *cert. granted*, 531 U.S. 956 (2000), *aff'd,* 121 S. Ct. 1819 (2001); *see also Ahmed v. Sromovski*, 103 F. Supp. 2d 838, 843 (E.D. Pa. 2000) (quoting *Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000)) (stating that § 1997e(a) "specifically mandates that inmate-plaintiffs exhaust their available

---

[6] *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

administrative remedies").   Prison conditions have been held to include the

"environment in which prisoners live, the physical conditions of that environment, and

the nature of the services provided therein."   *Booth*, 206 F.3d at 295.

   In severing, the court held that plaintiff was limited to the time frame of the

original complaint.   (D.I. 1 at 2 ¶ 4)   The two-year statute of limitations relates back to

the original complaint, thus permitting claims for alleged violations between September

12, 2010 and September 12, 2012.   (*See* Civ. No. 12-1120-SLR at D.I. 1)   Defendants

allege plaintiff did not exhaust the administrative remedies for each of his claims,[7] as

only two grievance forms were filed from May 12, 2012 to September 12, 2012.[8]   (D.I.

28 at 10 ¶ 25, 26)   Of the two grievance forms, Grievance #249441 dated July 18,

2012, states:   "Inmate alleges: his kosher meal tray is not correct.   See above scan for

details."   (D.I. 28, ex. C)   The referenced scan is not included with the grievance form.

While the grievance does not mention defendants and does not allege personal

involvement by defendants, on the record at bar, the court cannot discern if other

grievance forms or other documentation were filed within the appropriate time frame.

The record is insufficient to determine whether plaintiff exhausted his administrative

remedies as to his other claims.   The court denies defendants' motion for summary

judgment without prejudice to renew.

## B.  Motion to Dismiss

---

[7] As to the receipt of a previously approved religious item, plaintiff admittedly failed to
follow the VCC grievance procedure by stating that he "had not yet filed a grievance on
this matter . . . because he is at a loss as to how to grieve it, based on pas[t]
experiences."   (D.I. 6 at 12)

[8] Defendants base their time frame on combining: (1) the two-year statute of limitations
ending on May 12, 2012, when plaintiff joined the original complaint; and (2) the date
that the original plaintiffs filed the original complaint.

8

Defendants move to dismiss[9] on the grounds that plaintiff: (1) cannot receive monetary damages, under the RLUIPA, from defendants in their official and individual capacities; (2) is time-barred from claims against Morris and Pennell; and (3) fails to plead Senato had sufficient personal involvement.   (D.I. 28 at 1 ¶ 2)

### 1. Monetary damages

Plaintiff seeks compensatory and punitive damages from defendants in their official and individual capacities, in addition to a declaratory judgment.   (D.I. 12 at 2) The RLUIPA does not permit actions for damages against state officials in their official capacities by reason of Eleventh Amendment immunity or in their individual capacities. *See Sossamon v. Texas*, 563 U.S. 277, 293 (2011); *Sharp v. Johnson*, 669 F.3d 144, 1534 (3d Cir. 2012).   Instead, the only potential relief available under the RLUIPA is injunctive or declaratory relief.   *See Payne v. Doe*, 636 F. App'x 120, 125 (3d Cir. 2016).   The court dismisses plaintiff's claims for monetary damages under the RLUIPA.

### 2. Claims against Morris

Morris contends the claim against her[10] is barred by the two-year statute of limitations for personal injury claims since she was added to the claim on August 7, 2015.[11]   (D.I. 28 at 4; D.I. 8 at 2)   As explained above, plaintiff was limited to the time frame of the original complaint, September 12, 2010 to September 12, 2012.   Plaintiff states he "was classified to the [VCC] work pool upon having his classification in 2008/2009," and several years later attended (along with numerous other inmates) a

---

[9] Or, in the alternative, request a more definite statement.

[10] In the event that plaintiff has exhausted his administrative remedies.

[11] Defendants' motion to dismiss states Morris was added to the complaint on May 29, 2015.   However, the court added Morris to the complaint on August 6, 2015. (D.I. 10)

mass interview for a culinary department position conducted by Morris. (D.I. 12 at 12) Plaintiff concludes that he did not receive the position because of his inability to work on the Sabbath. He then accepted a building janitorial position several years later. The court cannot discern from the record the dates associated with Morris's alleged conduct. Defendants' motion for a more definite statement is granted.

### 3. Claims against Pennell

Plaintiff alleges Pennell caused more than a four-year delay for the confirmation of his Jewish faith. A letter from Pennell to plaintiff, dated October 27, 2008, requests plaintiff to provide "information of [his] Jewish heritage," so that his beliefs could be approved by Rabbi Vogel. (D.I 16 at 24) Pennell's letter to plaintiff on February 17, 2009 explained the process could not move forward until plaintiff complied with his earlier request. (D.I 16 at 25) These letters belie plaintiff's allegations of delay. Moreover, the claim is based on facts occurring outside of the two-year statute of limitations which, based on the original claim filed on September 12, 2012, bars incidents prior to 2010. Plaintiff's claim of delay is time-barred.

### 4. Claims against Senato

Plaintiff alleges that, shortly after receiving the kosher diet, his meals were tampered with; moreover, Senato allowed non-kosher meals to be served to plaintiff, which violated his "rights to be free from having prohibited meals forced upon him, but also in retaliation against him . . . ." (D.I. 32 at 3) It is unclear whether Grievance #249441, for an incorrect kosher meal, refers to Senato's alleged actions since the initial grievance form (scan) was not included. As to the contention that the claims against Senato are time-barred, plaintiff's statements and allegations contain no dates

10

for the court to discern which claims (if any) survive the statute of limitations.   Plaintiff fails to plead Senato's personal involvement outside of his official capacity as a food services supervisor.   *See Iqbal,* 556 U.S. at 676 (noting it is well established that supervisory liability cannot be imposed under § 1983 on a respondeat superior theory). Once again, because the complaint is ambiguous as to the timing and extent of Senato's alleged conduct, defendants' motion for a more definite statement is granted.[12]

### 5.  Qualified immunity

As to the defendants' motion to dismiss based on qualified immunity, "[t]he doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."   *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).   "[I]t is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases."   *Newland v. Reehorst*, 328 F. App. 788, 791 n. 3 (3d Cir. 2009) (unpublished).   Based on the record before it, full analysis of whether qualified immunity applies to plaintiff's claims against defendants is premature because there are unresolved questions of fact relevant to the analysis.   The motion to dismiss is denied in this regard, without prejudice to defendants' ability to later raise the defense.

## IV.  CONCLUSION

For the above reasons, the court grants defendants' motion to dismiss claims for monetary damages under the RLUIPA and as to Pennell regarding the delay in

---

[12]  Plaintiff's motion to compel requests documentation associated with the culinary department's resolution process for grievances and Senato's official duties.

11

recognizing plaintiff's faith. (D.I. 28) The remainder of the motion is denied. (*Id.*) The court grants defendants' request for a more definite statement. The court denies defendants' motion for summary judgment without prejudice to renew. Plaintiff shall file an amended complaint by August 26, 2016[13] as set forth in this memorandum to avoid dismissal of the case. A separate order shall issue.

---

[13] This date includes time after the motion to compel due date to provide plaintiff ample time to incorporate any necessary documents into his amended complaint.